CHASEZ, Judge.
This is a realtor’s suit for his commission. From a judgment in favor of the plaintiff, Warren V. Woodworth, Jr., awarding him a commission of $1,537.45 plus 25% attorney’s fees, with legal interest, the defendant, Daniel R. Grubb, prosecutes this appeal.
On April 26, 1964, the parties entered into a written listing agreement whereby the defendant-appellant, Daniel R. Grubb, gave to Mr. Woodworth an exclusive listing for the sale of his residence. This contract reads in pertinent part:
“New Orleans, La. 4/26/64
“In consideration of your efforts to find a buyer for the property, 7004 Wilty St., Metairie, La.”
* * * * * * “I/we employ you or your successors, exclusively, and hereby give and grant you the sole and exclusive right, to sell same for Twenty-five Thousand, Nine Hundred Seventy ($25,970.00) dollars cash, or on the following terms: $3,000 & purchaser to assume G.I. 5%% loan of approx. $22,970, or for any other price, or terms as may hereafter be agreed upon, and I/we agree to pay you or your successors, a commission of 6 percent on the gross amount of any deal (agreement to sell or exchange) that may be negotiated during the existence of this contract, or on the gross amount of any such agreement made within forty-five days after the expiration or termination of this contract, with anyone to whom said property has been quoted, during the term of this contract.”
* * * * * *
“In case of employment of counsel to enforce this contract, I/we will pay all costs and attorney’s fees.
“I/we agree to refer all applicants to you, and not to interfere in the sale of the property, during the term of this contract.
“As you are to act upon the faith of this employment and for the further consideration of the expenditure by you of amounts for advertising and/or other means of promoting the sale of the above property, and other expenditures relative thereto, this authorization to sell shall remain in full force and effect for a period of Two weeks from this date.”
* * *
On June 10, 1964 Mr. Grubb sold the property to Mr. and Mrs. Roy Clinton Smith, Jr. for the price of $25,624.15 without the aid of the realtor and paid no commission.
Mr. Woodworth filed this suit alleging that pursuant to the above contract, he had endeavored to locate a purchaser for the property; that due to his efforts one Roy Clinton Smith, Jr. was informed of the property, and telephoned the petitioner on May 11, 1964; that the petitioner met with Mr. Smith who failed to make an acceptable offer; that on information and belief, Mr. Grubb entered into negotiations with Mr. Smith, contrary to the contract provision “that the defendant was not to interfere in the sale of the property during the term of the agreement”, which negotiations resulted in a sale; that since the sale was made to a purchaser to whom the property had been quoted during the term of the agency agreement and within 45 days after its expiration, he was entitled to a commission.
The defendant filed exceptions of no right and no cause of action, urging that the listing agreement, which was for two weeks only, expired at midnight, May 10, 1964, and since Mr. Woodworth did not see Mr. Smith to negotiate with him or “quote” the property to him until May 11, 1964, as set forth in his petition, the exceptions should be maintained and this suit dismissed.
Thereafter an amended petition was filed by the plaintiff -wherein he alleged that Mr. Smith contacted the petitioner’s office initially on May 9, 1964. The record discloses that the Court then overruled the *286 exceptions of no right and no cause of action as well as the exception to the jurisdiction of the Court which had also "been filed by the defendant.
In his answer, the defendant admitted the sale of the property to Mr. and Mrs. Smith, hut denied the remaining substantial allegations of the petition. In addition, he alleged that there was no contact between the plaintiff and the Smiths from April 26, 1964 through May 10, 1964; and alternatively the defendant alleged that the plaintiff actively breached the agreement and thereby forfeited his rights thereunder by his conduct in several particulars on May 11, 1964 when a meeting took place between the plaintiff and the Smiths.
The evidence adduced in this matter shows that the plaintiff-appellee, on obtaining this listing did endeavor to locate a purchaser for th'e property. A “FOR SALE” sign was placed in front of the property by the realtor, advertisements were placed in the newspaper, and the house was shown on at least one occasion to a party other than the Smiths. Mr. and Mrs. Smith were not secured as prospective purchasers by the efforts of the realtor in this matter. The Smiths came into the picture when Mr. Neal Corbett, a friend of Mr. Grubb and the job superior of Mr. Smith, brought Mr. Smith to see the house. This was on Saturday, May 9, 1964, and Mr. Grubb ■showed the house to Mr. Smith. Both Mr. Grubb and Mr. Smith testified to the fact that Mr. Grubb referred Mr. Smith to the listing agent, Woodworth Realty Co. Inasmuch as Mr. Smith was being transferred from Virginia, he called his wife who was in that State and had her fly to New Orleans to see the house. On Sunday, May 10th, Mr. Smith returned with Mrs. 'Smith (not by appointment) to look at the property.
While Mr. Grubb admittedly did tell Mr. Smith the asking price for the property and that it could be had by assumption, it appears from the record that they did not enter into any negotiation at any time during the interviews.
Regardless of the allegations of the petir tion and amended petition of the plaintiff, the evidence shows the first contact which occurred between the Smiths and Mr. Wood-worth was on the morning of Monday, May 11, 1964, when Mr. Smith called Mr. Wood-worth on the telephone to inquire about the house and make an appointment. An appointment was arranged for the afternoon of that day at the St. Charles Hotel in New Orleans, where the Smiths were staying.
There is conflict in the testimony as to whether or not the terms had been discussed by Mr. Smith and Mr. Woodworth during the telephone conversation between them on the 11th and whether the meeting at the hotel was arranged for the purpose of Mr. Smith’s signing a purchase agreement, or was simply to afford the Smiths the opportunity to make further inquiry about the property.
According to the testimony of Mr. Smith, this appointment was for “either one or two o’clock” in the afternoon. The Smiths waited until four o’clock without Mr. Woodworth showing up for the appointed meeting, whereupon they left the hotel to sight-see and returned about 6:00 P.M. In the meantime, Mr. Woodworth had called and left a number with the switchboard for the Smiths to communicate with him, the number being that of the Beachcomber, the Hotel Cocktail Lounge. The Smiths called this number and after a short delay Mr. Woodworth called back and then came to the room. Mr. Woodworth had with him a contract and agreement to purchase already drawn, and asked for a $1,500.00 deposit. Mr. Smith stated:
“ * * * I didn’t want to make a deal right then. I simply wanted to pursue the matter further. We hadn’t decided definitely we wanted to buy it. But I wanted to talk to him since he was the agent. He seemed to not like the idea of me not (being) ready to make my mind up. He thought I was, but (he then,) *287 after I told him I didn’t have the $1,500.-00 then. He sort of closed off the conversation and he left.”
We quote further the following testimony of Mr. Smith:
Q. “Had you asked him to prepare that contract ?
A. No. •
Q. Had you told him you would bring $1,500.00?
A. No.
Q. Had you entered into any terms or contract for the purchase of that property prior to that time?
A. No.
Q. Do you have a copy of the contract he gave you?
A. No.
Q. Did he leave a copy with your wife?
A. No.”
***** *
Q. “Now did you see him anymore after he left that night?
A. No.
Q. Did you call him the next day?
A. No.
Q. Did you have any more dealings whatsoever with him?
A. No.”
* * * * * *
Q. “Did Mr. Woodworth ever contact you again about selling you that house ?
A. No.
Q. He never called you again?
A. Na
Q. You had no more dealings with him?
A. No.”
******
On Tuesday, May 12, 1964 Mr. Grubb telephoned Mr. Corbett and subsequently, Mr. Smith, in order to ascertain the result of the interview Mr. Smith had with Mr. Woodworth. He learned from Mr. Smith that nothing was accomplished and Mr. Smith expressed his dissatisfaction with the realtor’s demeanor. Mr. Smith, in his testimony, stated:
Q. “Did you tell Mr. Grubb anything else?
A. “I told him that he (Woodworth) acted in such a manner that certainly wasn’t the kind of way I would expect a man trying to sell a piece of property to act. I thought perhaps he ought to know that the gentleman had acted this way, and that maybe he wouldn’t want to retain him any further. I further told him I would deal with him, but I mean, — the real estate commission was no concern of mine, — but I didn’t want to go through any contract negotiations with the real estate man that came up.
Q. You didn’t want to go for any further contract negotiations with him?
A. Right.
,Q. Because of his demeanor at your meeting ?
A. That was part of it.”
Thereupon Mr. Grubb called Mr. Wood-worth and told him to remove his “FOR SALE” sign because he “had heard these unpleasantries about his negotiations with Mr. Smith”. Direct negotiations were then had between. Mr. Grubb and Mr. Smith which ultimately resulted in the sale of the property to Smith.
We are not favored with written reasons for the trial court’s decision, but we believe the appeal herein is well taken and a reversal of the judgment should be ordered.
*288 The simple fact of the matter is that there was no contact between the realtor and the prospective purchaser until May. 11, 1964, which was after expiration of the two-weelc term of the listing agreement. This has been proven beyond a doubt. In view of this, there is no basis upon which to allow the realtor recovery, since the agreement had terminated.
However, the plaintiff-appellee argues that the contractual provision whereby a commission is owed when there has been an “agreement made within forty-five days after the expiration or termination of this contract, with anyone to whom said property has been quoted during the term of this contract * * * ” governs, and that it is not necessary that the quote be made by the real estate agent, but that the owner’s quote will suffice, when the realtor is not given the opportunity to quote to the prospective purchaser due to the defendant’s interference in not attempting to notify the realtor.
The plaintiff cites the case of Ruiz v. Kiehm’s Pharmacy, La.App., 37 So.2d 720, (La.App.1948) wherein it was stated “ * * It was not required that there be * * * anything more than a mere quoting of the property. To quote property surely means nothing more than to offer it and to state the price asked.” Suffice it to say the Ruiz case involved a quote by the real estate agency and not the owner and is not applicable here.
The record does not reflect that Mr. Grubb breached his agreement with the realtor herein, for Mr. Grubb instantly and properly referred Mr. Smith to the realtor at their first interview. This was precisely what the contract called for and no more!
“I/we agree to refer all applicants to you and not to interfere in the sale of the. property during the term of this contract.”
Had the defendant not referred Smith to the realtor, he would have been guilty of a breach of the contract. Under these circumstances and since negotiations were not conducted by Grubb with Smith anent the sale of this property at the time of the interviews on the 9th and 10th of May, 1964, we are of the opinion that mere mention by the owner of the asking price in response to an inquiry by Mr. Smith does not amount to a “quote” envisioned by the contract. On the contrary, this would be a natural thing to do when a prospective purchaser appears to look at a house and make inquiry. The contract itself provides for the referral of a prospective purchaser to the realtor who had an exclusive listing (which was done in this matter), and thus he is contemplated as the party who must do the “quoting” and not the owner. Therefore there was no breach of this contract by Mr. Grubb.
The record adequately reflects that the realtor did not locate a purchaser within the term of the contract between the parties; that the owner acted in good faith in carrying out the terms of his contract by referring Mr. Smith to the realtor; that no effort was made by the owner to impede the carrying out of the contract, or to defeat or deprive the agent from earning a commission under its terms; moreover, the record itself suggests that the demeanor of the agent at his interview with the Smiths was the cause of the Smiths refusing to enter into an agreement to purchase the property, and since this expired contract was not renewed there should be no recovery of a commission herein by the plaintiff. Therefore the judgment of the lower court is reversed and judgment is now entered herein in favor of the defendant-appellant, Daniel R. Grubb, and against the plaintiff-appellee, Warren V. Wood-worth, Jr., d. b. a. Woodworth Realty Co., dismissing the suit of plaintiff-appellee, all costs in both courts shall be borne by; the plaintiff-appellee.
Reversed.